# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

| | | |
|---|---|---|
| **RARE BREED TRIGGERS, LLC, a North Dakota limited liability company, and ABC IP, LLC, a Delaware limited liability company,** | ) ) ) ) ) | CASE NO. _____ |
| **Plaintiffs.** | ) ) | **JURY TRIAL DEMANDED** |
| **-vs-** | ) ) | |
| **BIG DADDY UNLIMITED, INC., a Florida corporation, BIG DADDY ENTERPRISES, INC., a Florida corporation, and BLACKSTOCK, INC., a Florida Corporation,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) ) | |

---

## COMPLAINT FOR PATENT INFRINGEMENT

---

This is an action for patent infringement in which Rare Breed Triggers, LLC ("Rare Breed") and ABC IP LLC ("ABC") (collectively, "Plaintiffs") accuse Big Daddy Unlimited, Inc. ("BDU"), Big Daddy Enterprises, Inc. ("BDE"), and Blackstock, Inc. ("Blackstock") (collectively "Defendants"), of infringing U.S. Patent No. 10,514,223 ("the '223 Patent") as follows:

## PARTIES

1.      Rare Breed is a limited liability company organized under the laws of the State of North Dakota with an address at 3523 45th Street South, Suite 100, Fargo, ND 58104.

2.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

3.      Upon information and belief, BDU is a corporation organized under the laws of the State of Florida with a place of business at 7600 NW 5th Place, Gainesville, Florida 32607and is a subsidiary of BDE and/or Blackstock.

4.      Upon information and belief, BDE is a corporation organized under the laws of the State of Florida with a place of business at 6915 NW 4th Blvd., Suite A, Gainesville, FL 32607 and is a subsidiary of Blackstock.

5.      Upon information and belief, Blackstock is a corporation organized under the laws of the State of Florida with a place of business at 7600 NW 5TH Place, Gainesville, FL 32607, is the incorporator/owner of Powered By Graves, Inc., an Oklahoma corporation, and controls its subsidiaries BDU and BDE.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, and 284-85.

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8.     Personal jurisdiction over Defendants is proper in this District because Defendants reside in and/or have a place of business his district.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

## **BACKGROUND**

10.     This lawsuit asserts infringement of the '223 Patent. A true and correct copy of the '223 Patent is attached hereto as Exhibit A.

11.     ABC is the current assignee and owner of all right, title and interest in and to the '223 Patent. This assignment has not been recorded at the United States Patent and Trademark Office ("USPTO"). Rare Breed has the exclusive license and right to sell products covered by the '223 Patent.

12.     Upon information and belief, Defendants have committed acts of patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

13.    The Plaintiffs and Defendants operate in the firearms industry.

14.    Plaintiffs are responsible for developing the first commercial forced reset semiautomatic trigger, including the Rare Breed FRT-15™ for use in the AR-15 weapon platform. The FRT-15™ trigger is one embodiment of the '223 Patent's invention.

15.    For the entire time the FRT-15™ has been marketed and sold by Rare Breed, it has been marked with a patent notice complying with 35 U.S.C. § 287. The patent number is engraved on the product and displayed on packaging as shown below:



16.    The Rare Breed FRT-15™ trigger was first introduced to the market in December 2020. It is unique, being the only hammer-forced-reset semiautomatic trigger on the market and exclusively protected by the '223 Patent. The unique FRT-

15™ trigger created a new market for the product that did not exist before. The FRT-15™ trigger has been the subject of much publicity, consumer interest, and vigorous sales.

17.     Defendants are responsible for misappropriating Plaintiffs' proprietary technology and selling it as their own in direct competition with Rare Breed.

18.     On December 17, 2021, counsel for Plaintiffs informed counsel for BDU and BDE that a preproduction model of the ALAMO-15 (the Alamo Triggers Graves Star-Fire V2 A.R.T., depicted below) had been examined and expressly accused it of infringing the '223 Patent in open court (*Rare Breed Triggers, LLC, et al. v. Big Daddy Enterprises, Inc., et al.*, Case No. 1;21-cv-149, N.D. Florida).



19.     On or about February 25, 2022, Defendants began offering the "PBG ALAMO-15" trigger (the "Infringing Device"), pictured in Paragraph 48, below, for sale.

## Background

20.     Graves was issued U.S. Patent Nos. 9,568,264, issued February 14, 2017, and 9,816,722, issued November 4, 2017 ("the Flex-Fire Technology Patents"), for what he called Flex-Fire Technology.

21.     The Flex-Fire Technology Patents disclosed a trigger reset mechanism in which the gun's bolt, and not the hammer, reset the trigger.

22.     Wolf Tactical found Graves' Flex-Fire Technology not readily adaptable to the AR-platform.

23.     So, a new invention was made by Jeffrey Cooper Rounds ("Rounds") of Wolf Tactical that used movement of the hammer, rather than the bolt (or bolt carrier), to reset the trigger in combination with a locking bar that keeps the trigger from being pulled again until the action returns to battery (i.e., the bolt carrier and bolt returns to the closed, "in-battery" position). This new invention is embodied and claimed in the '223 Patent, which was assigned to Wolf Tactical. Although not limited to use in an AR-pattern firearm, it is readily adaptable thereto, including as a "drop-in" trigger assembly.

24.     Wolf Tactical assigned the '223 Patent to Rare Breed, who then assigned it to ABC.

25.     Later, Graves was issued U.S. Patent No. 9,939,221, issued April 10, 2018, and titled "Flex-Fire G2 Technology." This patent resulted from a

continuation-in-part application filed November 13, 2017, after the priority date of the '223 Patent. The Flex-Fire G2 Technology Patent also disclosed a trigger reset mechanism in which the gun's bolt, and not the hammer, reset the trigger.

26.    On January 31, 2018, Graves granted to Wolf Tactical, LLC ("Wolf Tactical") of Buda, Texas, an exclusive license ("the Graves License") to these patents (U.S. Patent Nos. 9,568,264; 9,816,722; and 9,939,221) to "develop, manufacture, make, use, offer for sale, import, and export" products covered by the patents for "AR-pattern firearms." Thus, Graves would be precluded from making, using, selling, or offering for sale a device covered by the Graves Flex-Fire Technology Patents or the Flex-Fire G2 Technology Patent for AR-pattern firearms without first obtaining a sublicense from Wolf Tactical or its assignee.

27.    In designing the PBG ALAMO-15 trigger (the "Infringing Device"), Defendants copied the invention disclosed and claimed in the '223 Patent. The Infringing Device is a "drop-in" assembly that uses contact of the hammer, rather than the bolt (or bolt carrier), to reset the trigger in combination with a locking bar that keeps the trigger from being pulled again until the action returns to battery.

28.    The Infringing Device uses a roller on the locking bar. This modification does not exclude the Infringing Device from the scope of the '223 Patent claims.

## The '223 Patent Invention

29.    The '223 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. While the '223 Patent may be adapted to many types of firearms (including, but not limited to, AR-pattern firearms), the Plaintiffs' FRT-15™ trigger was designed as a drop-in replacement particularly to fit AR-15 pattern firearms.

30.    An example of the Rare Breed FRT-15™ trigger is shown in Paragraph 15, above.

31.    A standard AR-15 pattern firearm, for example, is a semiautomatic firearm. In standard semiautomatic firearms, the trigger releases a sear which allows a hammer to contact a firing pin and fire a chambered ammunition cartridge, i.e., a "round." Part of the force that propels the round is used to cycle the rifle's bolt/bolt carrier or "action" in a rearward direction which extracts and ejects the spent cartridge. Springs at the rear of the bolt carrier act to return the bolt to its original firing position (i.e., into battery), and while so returning, a new cartridge (i.e., "round") is placed in the firing chamber. The longitudinal reciprocation of the bolt also resets the hammer and enables the weapon to be fired again. This process can be seen in the sequence of illustrations below.

32.     For background context, the following is a depiction and description of the operation of a *standard* **AR-pattern trigger mechanism**:



33.     The trigger is shown in purple. The hammer is shown in brown. The disconnector is shown in green. The bolt carrier is shown in blue.

34.     The process is commenced by the trigger being pulled by the user. The trigger releases the hammer from the trigger sear and allows the hammer to strike the firing pin.



35.    A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm.



36.    The rear-ward movement of bolt carrier cocks the hammer on the disconnector and allows the bolt to return into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position.

37.    The '223 Patent is a semiautomatic trigger that represents improvement on the above-described technology because it makes the disconnector unnecessary by forcibly returning the trigger to the reset state.

38.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is

reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

39.     The '223 Patent invention does not require a disconnector in the trigger mechanism. The '223 Patent teaches a forcible reset of the trigger by the hammer while the bolt returns to the in-battery position. The '223 Patent also teaches a "locking bar" which limits movement of the trigger. The locking bar acts to prevent the trigger from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position. This is depicted in the illustrations below.

40.     The following is a reproduction of a representative trigger assembly according to an embodiment of the '223 Patent:



41.    The trigger is shown in red. The hammer is shown in brown. The

locking bar is shown in green. The bolt carrier is shown in blue.



42.    When the trigger is pulled, the hammer is released, which strikes the

firing pin carried in the bolt carrier.

43.    As the round fires, propellant gas pressure causes the action to cycle.

This begins the process of sending the bolt carrier toward the rear of the firearm.



44.     As the bolt carrier moves toward the rear of the firearm, the bolt carrier engages with and cocks the hammer. The invention of the '223 Patent provides that the hammer forcibly resets the trigger. Simultaneously, the locking bar engages with the trigger and mechanically prevents the shooter from pulling the trigger until the locking bar is reset. The locking bar cannot be reset until the bolt carrier returns to its in-battery position.

45.     As the bolt carrier returns forward to its in-battery position, a new round is inserted into the chamber and the bolt closes. As the bolt closes, the bolt carrier contacts and pivots the locking bar, freeing the trigger to be pulled again by the user and the firing process repeated.

46.     The claims of the '223 Patent define the scope of the invention. For example, Claim 4 specifies a housing, a hammer, a trigger member, and a locking bar.

## The Infringing Trigger

47.    Defendant is currently making, using, selling, and/or offering for sale a version of Plaintiffs' FRT-15™ trigger assembly, which embodies the technology claimed in the '223 Patent.

48.    Defendants' infringing trigger assembly is called the "ALAMO-15" ("the Infringing Device").  The Infringing Device is a "drop-in" replacement trigger assembly for an AR-pattern firearm. Exemplary photographs of the Infringing Device are shown below:



49.    Below is an illustration of internal components, primarily the trigger, hammer, locking bar, and springs, of the Infringing Device.



50.    Defendants' Infringing Device employs and embodies the technology claimed by the '223 Patent by using the hammer contact to forcibly reset the trigger and preventing the trigger from being pulled again until the forward action of the bolt carrier disengages the locking bar from the trigger, as specified in the claims of the '223 Patent. Furthermore, the Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins, as specified in Claim 4 of the '223 Patent.

51.    FIG. 2 of the '223 Patent, shown below, is illustrative of one embodiment of the invention. FIG. 2 depicts a "drop-in" trigger assembly (with the housing partially cut away).



**FIG. 2**

52.    The hammer 18 includes a sear catch 46 that engages the sear 48 on the

trigger member 26, when cocked.

53.    FIG. 3 is representative of one embodiment of the locking bar 62 and

its relationship with the trigger 28, hammer 18, and bolt carrier 56.



**FIG. 3**

54.    The user can rotate a safety selector (60) between safe and fire (forced

reset semiautomatic with locking bar) modes.

55.    For the reasons discussed in more specificity below, the Infringing Device infringes at least one claim of the '223 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271.

56.    In view of the Defendants' defiance of Rare Breed's prior express infringement accusation in advance of commercial sale of the Infringing Device, the infringement is willful.

### Sale of the Infringing Trigger

57.    BDU has published promotional videos, such as that which can be viewed at https://www.youtube.com/watch?v=j5TNi8gYg8Y. This video instructs viewers to go to GRAVESTRIGGERBDU.COM to purchase the Infringing Device, displaying the URL as shown in the screen capture image below:



58.    The GRAVESTRIGGERBDU.COM URL leads the customer to a website for them to access BDU, as shown in the scree capture image below;



59.     Another    such    promotional    video    can    be    viewed    at
https://www.youtube.com/watch?v=3nUJdmBZ_8U.    This    promotional    video
instructs   customers   to   visit   POWEREDBYGRAVES.COM   to   purchase   the
Infringing Device, as shown in the screen capture image below from the video:



60.     The   POWEREDBYGRAVES.COM   website   allows   customers   to
purchase   the   Infringing   Device   without   paying   the   BDU   membership   fee.   This

website displays a contact address of 6921 NW 22nd St., Suite B, Gainesville, FL

32653

61.     On information and belief, Powered By Graves, Inc. is owned and

controlled by Blackstock, Inc., a Florida corporation.

## COUNT I – INFRINGEMENT OF THE '223 PATENT

62.     The allegations set forth in paragraphs 1-61 are fully incorporated into

this First Count for Relief.

63.     Upon information and belief, Defendants have and continue to directly

and/or indirectly infringe, including through the doctrine of equivalents, at least

Claim 4 of the '223 Patent by making, using, selling, offering for sale, importing

and/or promoting, providing, and causing to be used without authority within the

United States, the ALAMO-15 forced reset trigger (the "Infringing Devices). This

infringement was willful.

64.     An exemplary comparison of the Infringing Device with claim 4 of the

'223 Patent is illustrated in the chart below:

| Claim Language | Infringing Device (ALAMO-15 Trigger) |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer | The Infringing Device is a trigger mechanism. |

| | |
|---|---|
| when cycled, a trigger mechanism, comprising: | <br><br>It is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br><br><br>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. |



| | |
|---|---|
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | The Infringing Device includes a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis between set and released positions. |





Hammer

Sear
notch

Transverse
axis

**RELEASED**
**POSITION**

| | |
|---|---|
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position; | The Infringing Device includes a trigger member with a sear and that is mounted in the housing to pivot on a transverse axis between set and released positions.  Surface  Trigger member  Sear  Transverse axis  **SET POSITION** |



The trigger member has a surface (shown above) positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled.



The contact causes the trigger member to be forced to the set position.

| | |
|---|---|
| a locking bar pivotally mounted in the housing and spring biased toward a first position in which | The Infringing Device includes a locking bar that is pivotally mounted in the housing. |

the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position.



The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.





The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaches a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.





65.     The working components of the Infringing Device include functional reproductions of the '223 Patent when comparing the working components of the Infringing Device to the language of the claims, which is the legal standard for infringement.

66.     Because the claims describe the invention as "comprising" the enumerated elements, the scope of the claims are not limited to those elements and the inclusion of additional structures or features not specified in a claim does not avoid infringement. Thus, the addition of a roller wheel to the locking bar in the Infringing Device does not affect its infringing status.

67.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct and/or indirect infringement of the '223 Patent under 35 U.S.C. § 271 (a), (b), and/or (c).

68.    Sales of the Infringing Device directly compete against and unlawfully displace sales of the patented Rare Breed FRT-15™ trigger.

69.    The Infringing Device is structurally and functionally equivalent to the preproduction model shown in Paragraph 18, above.

70.    The Infringing Device is structurally and functionally equivalent to the Wide Open trigger ("WOT"), previously sold by BDU, apart from the absence of a roller wheel on the locking bar.

71.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, and reputation.

72.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.    A judgment in favor of Plaintiffs that Defendants have infringed and/or induced others to infringe the '223 Patent;

b.      A preliminary injunction enjoining Defendants and their agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or inducing the infringement of the '223 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.      A permanent injunction enjoining Defendants and their agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent, or other such equitable relief as the Court determines is warranted;

d.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '223 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

e.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: March 8, 2022                 Respectfully submitted,

_/Glenn D. Bellamy/_
Glenn D. Bellamy (Pro Hac Vice pending)
   gbellamy@whe-law.com
Charles D. Pfister (Pro Hac Vice pending)
   cpfister@whe-law.com
**WOOD HERRON & EVANS LLP**
2700 Carew Tower
441 Vine Street
Cincinnati OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234

_Attorneys for Plaintiffs_